UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


ROZSA VIRAG,                            :
    Plaintiff,                     :
                                   :
v.                                     :            NO. 3:11CV1499 (DJS)
                                   :
GOODWILL INDUSTRIES OF                 :
WESTERN CONNECTICUT, INC.,             :
    Defendant.                     :


MEMORANDUM OF DECISION AND ORDER

The plaintiff, Rozsa Virag ("Virag"), claims that the defendant, Goodwill Industries of

Western Connecticut, Inc.[1] ("Goodwill"), violated the Age Discrimination in Employment Act,

29 U.S.C. § 621, et seq. ("ADEA") when it refused to hire her in 2009 because of her age.

Pending before the Court is the defendant Goodwill's motion for summary judgment. For the

reasons stated below, Goodwill's motion for summary judgment (doc. # 55) is granted.

A. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  "[A]t the summary judgment stage the judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial."  *Redd v. N.Y. State Division of Parole*, 678 F.3d 166, 173-74 (2d Cir. 2012) (internal

quotation marks omitted).  In making that determination, the Court must "construe the evidence

in the light most favorable to the non-moving party and . . . draw all reasonable inferences in its

favor."  *Huminski v. Corsones*, 396 F.3d 53, 69-70 (2d Cir. 2004) (internal quotation marks

---

[1] In 2012 Goodwill Industries of Western Connecticut, Inc. changed its name to Goodwill
of Western and Northern Connecticut, Inc.

omitted).

"The moving party bears the burden of showing that he or she is entitled to summary judgment." *Id.* at 69.  The movant can satisfy that burden by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." *Burt Rigid Box, Inc. v. Travelers Property Casualty Corp.*, 302 F.3d 83, 91 (2d Cir. 2002). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment, and the Federal Rules of Evidence govern such admissibility." *Jackson v. Federal Express*, 766 F.3d 189, 194 (2d Cir. 2014) (internal quotation marks omitted).

## B. FACTS[2]

The plaintiff Virag was over the age of fifty at all times pertinent to this action. Virag is fluent in Hungarian but does not speak English.

The defendant Goodwill provides services to people with disabilities, economic

---

[2]Although the Court must construe the evidence in the light most favorable to the nonmoving party, "a party cannot rely on inadmissible hearsay in opposing a motion for summary judgment." *Chansamone v. IBEW Local 97*, 523 F. App'x 820, 823 n.4 (2d Cir. 2013) (internal quotation marks and alterations omitted). In that regard the Court notes that the Paintiff's Objection to Defendant's Motion for Summary Judgment refers to an alleged statement made by Eric Strid in January 2012. Since Strid was no longer employed by Goodwill at that time, the statement he is alleged to have made cannot be considered an admission by a party opponent. *See* Fed. R. Evid. 801 (d)(2)(D) (to qualify as an admission by a party opponent, a statement by a party's employee must be made "on a matter within the scope of that relationship and while it existed"). Consequently that statement is inadmissible hearsay and will not be considered by the Court for purposes of ruling on the pending motion for summary judgment.

disadvantages, and other barriers to employment throughout western and northern Connecticut. Goodwill offers a number of programs, including job training and coaching. Individuals who receive job training through a Goodwill program are referred to as "consumers" or "program participants." (Doc. # 63-6, at 40:25, 41:1).  Program participants are determined to be eligible and referred to Goodwill by agencies of the State of Connecticut. Virag has never participated in or applied for any of Goodwill's programs.

Goodwill owns and operates fifteen retail stores in Connecticut. On or about August 14, 2009, Virag visited a Goodwill store located in Manchester, Connecticut. Virag was accompanied by Alexander Langer ("Langer"), who is fluent in both Hungarian and English. During this visit Langer inquired on behalf of Virag about applying for a job with Goodwill and Virag was provided with an employment application. Langer assisted Virag in completing the application and Virag submitted her completed job application on that same date to Eric Strid ("Strid"), who at that time was a Shift Supervisor at the Manchester store.

On August 16, 2009, Strid was promoted to the position of Assistant Manager of the Goodwill store in Newington, Connecticut. Shortly thereafter, Strid contacted Chris Behrmann ("Behrmann"), who was the manager of the Goodwill store in Manchester, and requested that Behrmann send any job applications on file at the Manchester store to Newington, since Strid needed to fill a position at the Newington store.

On or about August 17, 2009, Virag and Langer returned to the Manchester store and met with Behrmann. On that occasion Behrmann informed Virag that there were no current openings at the Manchester store, but that there were two "material handler" positions available at  the Newington store. Behrmann told Virag that if she were interested in one of these positions she

should go to the Newington store and ask for Strid. The essential job functions of a Goodwill material handler included assisting donors with the donations, providing properly completed receipts, and thanking donors for supporting Goodwill's mission, as well as other duties such as sorting and packing donated items. The stated job requirements for the position of material handler were "[m]ust be able to stand for long periods," "[c]onsiderable standing, reaching, lifting, carrying, bending, pushing and pulling required," and "[m]ust be able to lift over 40 pounds." (Doc. # 56-5, at 28).

At that time there was also an available cashier position at the Newington store. The essential job functions of a Goodwill cashier included providing customer service in promoting merchandise, assisting donors with donations, providing receipts, selling merchandise to customers, and completing daily store reports. Job requirements for the cashier position included "experience in retail sales performing cashiering, customer service, display, shipping/receiving and inventory duties," and "[a]ble to . . . provide customer service." (*Id.* at 26).

Several days later, Virag and Langer went to the Newington store. With the assistance of Langer, Virag completed a second job application and then met with Strid about job openings at that location. Strid told Virag and Langer that the position of material handler required "no experience," and that "[a]nybody can do this [job]." ( Doc. # 63-5, at 28, p. 106:16, 20). Langer told Strid that Virag "has very limited English and she needs some help." (*Id.* at 26, p. 99:12-14). Strid responded by saying, "This is not a problem because we are committed to teach people . . . English, and we have a training room for this." (*Id.* at 27, p. 103:20-23). He also stated that "[w]e['re] going to teach Rozsa English." (*Id.* at 26, p. 99:20-21). Strid advised them that he would contact Virag in three or four days to let her know what Goodwill had decided in terms of

her job application.

When Virag did not hear back from Strid within the time frame he had mentioned, Langer called Strid and asked why he had not called about Virag's job application. Strid responded by stating, "I'm not hiring. I filled the position. Bye." (*Id.* at 26, p. 100:17-18). Strid's employment with Goodwill ended on February 14, 2011.

In 2012 Langer encountered Behrmann at the grand opening of a new Goodwill store in Westport, Connecticut. On that occasion, Langer said to Behrmann, "Hey, nice people here, young people." (*Id.* at 28, p. 109:23-24). Behrmann responded, "Yes, . . . Goodwill likes [to] hire younger people. You know, we like younger people at Goodwill." (*Id.* at 28-29, p. 109:24-25, p. 110:1).

Goodwill has had an "English-Only" policy in effect since 2007. Among other things, that policy provides that "English will be used when dealing with customers who express a preference or the expectation that our employees are proficient in English," and that "[a]ll task directions and work directives will be provided in English and, while employees are engaged in such work-related efforts on project teams, they will be expected to communicate in English." (Doc. # 56-5, at 10). Goodwill employees, i.e., people hired by Goodwill to act as Goodwill staff, were required to speak and take direction in English. Program participants, i.e., individuals referred by a state agency to Goodwill for job training in a Goodwill store, were not subject to the English-Only policy. Program participants generally have a job coach assigned to provide assistance and support to the participant.

In September 2009 Goodwill hired a twenty-five year old woman for a cashier position at the Newington store. This individual met the requirements of the English-Only policy and had

prior, satisfactory experience working as a cashier for Goodwill.

## C. DISCUSSION

The ADEA's purpose is "to promote employment of older persons based on their ability

rather than age [and] to prohibit arbitrary age discrimination in employment . . . ." 29 U.S.C.

§621(b). Pursuant to the ADEA "[i]t shall be unlawful for an employer . . . to fail or refuse to hire

. . . any individual . . . because of such individual's age . . . ." 29 U.S.C. §623(a). The ADEA's

prohibition against age discrimination protects "individuals who are at least 40 years of age." 29

U.S.C. §631(a).

"Claims brought pursuant to the ADEA are analyzed under the *McDonnell Douglas . . .*

tripartite burden-shifting framework." *Timbie v. Eli Lilly & Co.*, 429 F. App'x 20, 21-22 (2d Cir.

2011). "In a nutshell, a plaintiff first bears the minimal burden of setting out a prima facie

discrimination case, and is then aided by a presumption of discrimination unless the defendant

proffers a legitimate, nondiscriminatory reason for the adverse employment action, in which

event, the presumption evaporates and the plaintiff must prove that the employer's proffered

reason was a pretext for discrimination." *McPherson v. N.Y. City Dept. of Education*, 457 F.3d

211, 215 (2d Cir. 2006) (internal quotation marks omitted). In the context of an ADEA claim,

once the defendant articulates a legitimate, nondiscriminatory reason for the adverse employment

action, "the plaintiff must show that a reasonable jury could conclude by a preponderance of the

evidence that [the plaintiff's] age was a 'but for' cause of [the adverse employment action]."

*Timbie*, 429 F. App'x at 22 (internal quotation marks omitted).

### i. Prima Facie Case

"In order to establish a prima facie case of age discrimination, [Virag] must show (1) that

she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010).

At the time she applied for a position with Goodwill, Virag clearly was within the protected age group, since she was over the age of forty. She also experienced an adverse employment action, since Goodwill did not hire her. It is less clear that she was qualified for an available position[3] or that Goodwill's failure to hire her occurred under circumstances giving rise to an inference of discrimination.

In considering these questions, the Court is guided by the principle that a plaintiff's burden in establishing a prima facie case of discrimination is "de minimis." *Timbie*, 429 F. App'x at 22. With regard to being qualified for any particular position, "*McDonnell Douglas* requires only a minimal showing of qualification to establish a *prima facie* claim." *Palumbo v. Carefusion 2200, Inc.*, No. 12-CV-06282 EAW, 2014 U.S. Dist. LEXIS 110765, at *20 (W.D.N.Y. Aug. 11, 2014) (internal quotation marks omitted). Langer testified at his deposition that Strid told Virag and him that the job of material handler "needs no experience" and that "[a]nybody can do this [job]." (Doc. # 63-5, at 28, p. 106:16, 20). For the purpose of determining whether Virag has established a prima facie case of discrimination, the Court will assume that she has made a minimal showing that she was qualified for the position of material handler.

---

[3]Although Goodwill contends that the only position available at the Newington store was a cashier position, Virag contends that she was told by Behrmann that there were material handler positions available at the Newington and that Strid discussed the requirements of the material handler position with her and Langer. For the purposes of this motion, the Court will proceed on the basis that Virag applied for both positions.

With regard to the position of cashier, the record evidence indicates that the job requirements for that position included, among other things, "experience in retail sales performing cashiering, customer service, display, shipping/receiving and inventory duties." (Doc. # 56-5, at 26). Since Virag has provided no evidence that she had experience in retail sales, she has failed to show that she was qualified for the position. The Court concludes that Virag has failed to establish a prima facie case of discrimination as to the position of cashier.

The remaining issue with respect to the establishment of a prima facie case of discrimination is whether Goodwill's failure to hire Virag as a material handler occurred under circumstances giving rise to an inference of discrimination. According to Langer, he told Strid that Virag "has very limited English and she needs some help."[4] (Doc. # 63-5, at 26, p. 99:12-14). Strid responded by saying, "This is not a problem because we are committed to teach people . . . English, and we have a training room for this." (*Id.* at 27, p. 103:20-23). He also stated that "[w]e['re] going to teach Rozsa English." (*Id.* at 26, p. 99:20-21). While it is questionable whether these comments are sufficient to demonstrate circumstances giving rise to an inference of discrimination, the Court will assume that Virag has established a prima facie case as to the position of material handler and proceed to the second step of the *McDonnell Douglas* analysis.

### ii. Legitimate, Nondiscriminatory Reason

The second step under *McDonnell Douglas* is the articulation of a legitimate, nondiscriminatory reason for the adverse employment action by the defendant. Goodwill has identified its legitimate, nondiscriminatory reason for not hiring Virag as "Ms. Virag's failure to

---

[4]The phrase "very limited English" is rather imprecise. It appears that Virag spoke virtually no English at the time she applied for a position with Goodwill.

meet the requirements of Goodwill's 'English Only' policy . . . ." (Doc. # 55-1, at 16). Thus Goodwill has articulated a legitimate, nondiscriminatory reason for not hiring Virag and has met its *McDonnell Douglas* burden of production.

### iii. Pretext

Since the defendant has met its burden under the second step of the *McDonnell Douglas* analysis, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture, and the burden shifts back to the plaintiff to come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Ben-Levy v. Bloomberg, L.P.*, 518 F. App'x 17, 19 (2d Cir. 2013) (internal quotation marks omitted).  Ultimately, Virag must prove "that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Financial Services, Inc.*,  557 U.S. 167, 180 (2009). "The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employer's only consideration, but rather that the adverse employment action would not have occurred without it." *Delaney v. Bank of America Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (internal quotation marks and alterations omitted).

Virag contends that the following evidence is sufficient to support a finding that the legitimate, nondiscriminatory reason articulated by Goodwill was a pretext for discrimination and that her age was the "but-for" cause of Goodwill's failure to hire her:  (1) Langer's deposition testimony that Behrmann told him: "Goodwill likes [to] hire younger people. You know, we like younger people at Goodwill" (Doc. # 63-5, at 28-29, p. 109:24-25, p. 110:1); and (2) Goodwill's hiring of a 25 year old woman for a cashier position at the Newington store after Virag had

applied for that same position.

With regard to Goodwill's hiring of a 25 year old woman for a cashier position at the Newington store, the Court has already concluded that Virag failed to establish a prima facie case of discrimination with respect to the position of cashier. Even if Virag had established a prima facie case as to the cashier position, the record evidence demonstrates that the woman hired by Goodwill not only satisfied the English Only policy, but had prior, satisfactory experience working as a cashier for Goodwill. The hiring of this individual for a cashier position at the Newington store in no way supports a finding that Virag's age was the "but-for" cause of Goodwill's failure to hire her.

With regard to the remarks made to Langer by Behrmann, Virag has failed to demonstrate a nexus between those remarks and Goodwill's failure to hire her. *See Brollosy v. Margolin, Winer & Evens, LLP*, No. 04-CV-0873 (DRH) (ARL), 2006 U.S. Dist. LEXIS 85484, at *28 (E.D.N.Y. March 20, 2006) ("In order for the remarks to be deemed significant, the plaintiff must show their nexus to the adverse employment decision."). "In determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative 'stray remark,' a court should consider the following factors: (1) who made the remark, *i.e.*, a decision-maker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decision-making process." *Pronin v. Raffi Custom Photo Lab, Inc.*, 383 F. Supp. 2d 628, 637 (S.D.N.Y. 2005).

Although Behrmann was the manager of the Manchester store, and therefore not a low-

level employee, there is no evidence in the record indicating that Behrmann made, or was involved in, hiring decisions for positions at the Newington store. Additionally, the comments made by Behrmann took place in 2012, more than two years after Virag applied for a job with Goodwill. *See Campbell v. Alliance National Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) (internal quotation marks omitted) ("Stray remarks by non-decision-makers . . . are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

With regard to the content of Behrmann's remarks, "Goodwill likes [to] hire younger people. You know, we like younger people at Goodwill," those remarks were made in response to Langer's comment, "Hey, nice people here, young people." (Doc. # 63-5, at 28, p. 109:23-24). This exchange occurred during the course of a chance encounter between Langer and Behrmann at the grand opening of a new Goodwill store in Westport, Connecticut. These circumstances do not come close to demonstrating "that a nexus exists between the allegedly discriminatory statements and a defendant's [adverse employment action]." *Silver v. North Shore University Hospital*, 490 F. Supp. 2d 354, 362 (S.D.N.Y. 2007). *See Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) ("the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination"). The remarks made by Behrmann do not support the conclusion that the legitimate, nondiscriminatory reason for not hiring Virag articulated by Goodwill was a pretext for discrimination and that Virag's age was the "but-for" cause of Goodwill's failure to hire her. Since Virag failed to carry her ultimate burden under *McDonnell Douglas*, Goodwill is entitled to summary judgment on her age discrimination claim.

CONCLUSION

For the reasons state above, the defendant Goodwill's motion for summary judgment

(**doc. # 55**) is **GRANTED**. Judgment shall enter in favor of Goodwill against the plaintiff Virag

and the Clerk is directed to close this case.


SO ORDERED this 10th   day of February,  2015.



_____/s/ DJS_____

Dominic J. Squatrito
United States District Judge